## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LA'DREA L. LUCKEY,<br><br>        Plaintiff,<br><br>    vs.<br><br>ST. JUDE'S RECOVERY CENTER,<br>INC., doing business as Ascensa Health;<br>ANDREA MCLARTY; and<br>JYLYAN JONES,<br><br>        Defendants. | CIV. ACTION NO. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff La'Drea L. Luckey ("Luckey" or "Plaintiff"), by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants St. Jude's Recovery Center, Inc., doing business as Ascensa Health, Andrea McLarty, and Jylyan Jones (*collectively*, "Defendants"), respectfully showing the Court as follows:

## JURISDICTION AND VENUE

### 1.

The above-captioned case is commenced pursuant to: (a) 42 U.S.C. §§ 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") for pregnancy discrimination and retaliation; (b) the Americans with Disability Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA") for pregnancy discrimination and retaliation; (c) 29 U.S.C.§§ 701, *et seq.*, the Rehabilitation Act of 1973 ("Rehab Act") for disability discrimination and retaliation; and (d) the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

### 2.

This Court has original jurisdiction over Plaintiff's Title VII, ADA, and Rehab Act claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's State law claim pursuant to 28 U.S.C. § 1367.

### 3.

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because Defendants reside and/or maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful employment practices forming the basis of the Complaint occurred in this District and Division.

4.

Plaintiff satisfied all administrative prerequisites to commence the above-captioned case.  Specifically, Plaintiff timely submitted, *inter alia*, a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2020-07918) and Plaintiff has timely commenced the above-captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated November 5, 2020.

## **PARTIES**

5.

Luckey is a female citizen of the United States, resident of the State of Georgia, and entitled to bring an action of this nature and type.

6.

Luckey is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

7.

At all times relevant to the above-captioned case, Luckey was an employee of St. Jude's Recovery Center, Inc., doing business as Ascensa Health within the meaning of, *inter alia*, Title VII and the ADA.

8.

Defendant St. Jude's Recovery Center, Inc., doing business as Ascensa Health, ("Ascensa Health") is a domestic nonprofit corporation (Control Number A500255) authorized to do, and is actually doing, business in the State of Georgia.

9.

Ascensa Health is a behavioral health system of care located at 139 Renaissance Parkway, NE, Atlanta, Georgia 30308-2324.

10.

At all relevant times, Ascensa Health received, *inter alia*, Federal financial assistance, funding, and/or grants.

11.

Ascensa Health may be served with Summons and this Complaint for Damages via its Registered Agent, Suzanne Shaffer, 139 Renaissance Parkway, Atlanta, Georgia, 30308.

12.

Ascensa Health is and was, at all relevant times, a private employer engaged in an industry affecting commerce within the meaning of Title VII and the ADA, employing more than fifty (50) employees for each working day in each of twenty (20) or more calendar weeks in the current and preceding calendar years.

13.

Defendant Andrea McLarty ("McLarty") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

14.

McLarty is and was, at all relevant times, an employee of Ascensa Health, Director of Administrative Services, involved in the day-to-day operation of Ascensa Health, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Ascensa Health.

15.

McLarty is an employee of Ascensa Health and, at all relevant times, McLarty was Luckey's supervisor, who participated in the unlawful discriminatory and tortious conduct described herein

16.

McLarty may be served with process at Ascensa Health located at 139 Renaissance Parkway, Atlanta, Georgia, 30308.

17.

Defendant Jylyan Jones ("Jones") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

18.

Jones is and was, at all relevant times, an employee of Ascensa Health, Family Care Center Coordinator, involved in the day-to-day operation of Ascensa Health, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Ascensa Health.

19.

Jones is an employee of Ascensa Health and, at all relevant times, Jones was Luckey's direct supervisor, who participated in the unlawful discriminatory and tortious conduct described herein

20.

Jones may be served with process at Ascensa Health located at 139 Renaissance Parkway, Atlanta, Georgia, 30308.

## STATEMENT OF FACTS

### 21.

Ascensa Health is a behavioral health system of care located at 139 Renaissance Parkway, NE, Atlanta, Georgia 30308-2324.

### 22.

At all relevant times, Ascensa Health received, *inter alia*, Federal financial assistance, funding, and grants related to substance abuse treatment.

### 23.

Luckey is a twenty-nine (29) year old female and, at all relevant times, Luckey was pregnant.

### 24.

At all relevant times, Luckey was a qualified individual under, *inter alia*, the ADA and Rehab Act.

### 25.

After graduating from high school, Luckey attended California State University, where Luckey received a Bachelor's of Arts Degree in Criminal Justice with a minor in Sociology. Subsequently, Luckey received a Master's Degree in Social Work from Clark Atlanta University. Additionally, Luckey received several

certifications, including SBIRT, NCTSN, CPI, CPR and First Aid, CBT, and Relias Training.

26.

Prior to working with Ascensa Health, Luckey participated in several internship programs, including, Underdue Social Services, Inc., StandUp for Kids-Atlanta, and H.J.C. Bowden Senior Multipurpose Facility.

27.

On or about June 26, 2018, Luckey began working for Ascensa Health as a PRN employee in the Childcare Department and, in or about August 2018, Luckey was promoted to Childcare Supervisor, responsible for, *inter alia*, scheduling services, maintaining caseloads, preparing assessments, clinical and support services, client sessions, as well as other functions necessary to advance Ascensa Health's mission.

28.

In or about October 2019, Jones became Ascensa Health's Family Care Center Coordinator and Luckey's direct supervisor.

29.

At all relevant times, Luckey diligently performed all tasks while meeting or exceeding all performance expectations while employed by Ascensa Health. In

addition to receiving positive evaluations in February 2019 and 2020, Johnson stated that Luckey does a "great job" locating opportunities for children in the program. Moreover, Luckey's former supervisor and the former Program Director complimented Luckey's performance, including, but not limited to, weekly Luckey's performance in childcare and staff team meetings.

30.

In or about October 2019, Ascensa Health terminated an employee, Kaday Howard ("Howard"), who subsequently commenced litigation and filed a claim based upon unlawful employment practices.  On or about December 5, 2019, Jones and Rusty Gray ("Gray"), Vice President of Clinical Services, called the staff into a room, where Jones and Gray stated that, although employees were not allowed to testify, there was an Ascensa Health employee willing to testify on behalf of Howard.  Specifically, Jones stated, "If you think you had a target on your shoulder then you definitely have one now" and "your jobs are in jeopardy" if anyone testified on behalf of Howard.  Everyone left the meeting with the belief that, if anyone discussed, reported, or testified about unlawful employment practices, their employment would be immediately terminated.  At the conclusion of the meeting, an Ascensa Health employee, Valencia Beard ("Beard"), told Jones that Beard felt uncomfortable with Jones' statements and tone during the meeting.

31.

In or about February 2020, Luckey became pregnant and, due to subsequent medical complications, Luckey suffered from Gestational Carpal Tunnel Syndrome ("CTS"), resulting in numbness, tingling, sharp pains, throbbing sensations in her limbs, and loss of motor skills.

32.

In June 2020, Luckey requested and received, from Ascensa Health's Human Resources, FMLA information and documents related to maternity leave.

33.

On July 7, 2020, Luckey received a compensation increase based upon tenure and professional performance at Ascensa Health.

34.

Due to the pain, numbness, and loss of motor skills caused by the severe CTS, on or about July 24, 2020, Luckey advised Jones that Luckey could no longer drive Ascensa Health's van.

35.

Following an evaluation on July 27, 2020, Dr. Shawna D. Woodruff, provided Luckey with documentation, stating that Luckey was diagnosed with CTS, that Luckey was to refrain from work/activities that could complicate the CTS, and that Luckey could not perform certain physical activities, including, but not limited to, driving other than Luckey's commute to and from work ("Reasonable Accommodation").

36.

On or about July 31, 2020, Luckey provided Jones with the Reasonable Accommodation provided by Dr. Woodruff.

37.

Almost immediately after Luckey provided Jones with the Reasonable Accommodation, Jones instructed Luckey to relocate Luckey's vehicle from an approved parking lot to the lower parking deck. Alarmed because the relocation would require Luckey to climb stairs and result in CTS pain, Luckey stated, "I can't walk up those stairs." With hostility, Jones snapped back, "Well, your car has to be moved because we have movers." Resigned to deal with the pain and discomfort associated with the CTS, Luckey replied, "Yes, ma'am."

38.

Pursuant to Jones' instruction, Luckey went to the parking lot to relocate the vehicle to the lower parking deck.  Although Jones stated that Luckey had to relocate the vehicle to make room for a delivery truck, the parking lot had more than enough space for the delivery truck without the relocation of Luckey's vehicle. Nevertheless, Luckey drove the vehicle to the lower deck before painfully climbing the stairs to return to the office.

39.

When Luckey returned to the office, a childcare worker, Lateachia, agreed to relocate Luckey's vehicle to the approved parking lot following the delivery *purportedly* necessitating the relocation.  While traversing the hallway, Luckey advised Jones of the arrangement with Lateachia to subsequently relocate Luckey's vehicle due to Luckey's CTS.  Apparently angered, during a group session with Ascensa Heath's staff shortly after the advisement, Jones stated to Luckey, "After this group session, come to my office and I do mean now!"

40.

In accordance with Jones' instructions, following the group session, Luckey reported to Jones' office, where Jones immediately stated, "Shut the door—what was that in the hallway?"  Luckey respectfully responded, "I was letting you know

that I got help with the car—I can't go downstairs anymore." Jones angrily replied, "You were very rude and disrespectful." After further discussing whether Luckey or Jones were being rude, Luckey suggested, based upon Jones' angry tone and accusations, that they revisit the issue and discussion when Luckey returned to work on the following Tuesday. As Luckey gathered her personal belongings to leave the office, Jones irately barked, "Sit back down and we can talk about this, or we can go to HR and have an employee counseling session." Uncomfortable with the tone and tenor of the discussion, Luckey humbly responded, "That's fine, I prefer for HR to be in this room." As Luckey began to leave the office in furtherance of Jones' request to involve Human Resources, Jones threateningly stated, "If you walk out of this room, you will be written-up." Again, in accordance with Jones' prior direction and to deescalate the situation, Luckey left the office to seek the involvement of Human Resources.

41.

Immediately after the meeting with Jones, Luckey returned to Luckey's office, where Luckey called McLarty. Although McLarty observed Luckey's emotional distress and physical difficulties while relocating the vehicle, Luckey advised McLarty of the entire situation and incident involving Luckey, Jones, Luckey's CTS, the Reasonable Accommodation, Jones' instructions in direct

violation of the Reasonable Accommodation, as well as Jones' statements, instructions, and aggressive behavior. Because of Jones' tenor and tone during the prior meeting, Luckey requested that McLarty be present during the subsequent meeting with Jones. McLarty simply responded, "Thank you."

42.

At approximately 2:00PM on July 31, 2020, Luckey met with McLarty and Jones, who was angrily playing with a slinky toy. Initially, McLarty stated, with a negative attitude, "Tell me what's going on." Because the matter was previously discussed during the phone conversation, Luckey responded, "Tell you again, we already spoke." After McLarty stated, "Yes, tell me again," Luckey again explained the events precipitating the meeting. Rather than address Luckey's concerns, McLarty stated, "Well, your supervisor gave you direct orders not to leave the room, and what you did was insubordination." Despite Luckey's willingness to apologize and professionally move forward, Jones simply stated, "I have nothing else to say." After stating, "This isn't going anywhere," McLarty handed Luckey a yellow envelope while declaring, "Here is your separation notice."

43.

On the same day Luckey provided Defendants with the Reasonable Accommodation, Defendants terminated Luckey's employment.

44.

Under no uncertain terms, Defendants terminated Luckey's employment and punished Luckey based solely upon Luckey's pregnancy.

45.

Other employees and individuals, outside of Luckey's protected class, were treated differently because these employees and individuals, who were not pregnant, were not terminated or otherwise subjected to adverse employment actions associated with *purported* insubordination.

46.

Luckey was qualified and capable of continuing employment as a Child Care Service Supervisor despite Luckey's CTS pregnancy.

47.

As a result of Defendants' unlawful actions, Luckey has suffered, among other things, lost wages and benefits, as well as severe emotional distress.

48.

Upon information and belief, similar to the claims involving Howard, Ascensa Health is attempting to prevent employees from opposing unlawful employment actions involving Luckey. Recently, Ascensa Health advised employees of the above-captioned case and required employees to execute documents, wherein

employees state that they will not testify about Defendants' unlawful employment actions on behalf of Luckey.  Keeping with practice, Ascena Health seeks to retaliate against any employee opposes the unlawful employment practices forming the basis of the above-captioned complaint.

## CLAIMS FOR RELIEF

### COUNT I:
### PREGNANCY DISCRIMINATION
### IN VIOLATION OF TITLEVII AND ADA
**(Against Defendant Ascensa Health)**

49.

Luckey re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

50.

Title VII and the ADA prohibit employers from discriminating against employees because of pregnancy.

51.

Defendants violated Title VII and the ADA, such that a cause of action exists where discrimination on the basis of pregnancy was the causative agent of adverse actions directed at Luckey by Defendants.

52.

At all relevant times, Luckey was a pregnant female, qualified individual under the ADA, employee of Ascensa Health, and a member of a protected class under Title VII and the ADA.

53.

At all relevant times, Luckey was qualified for her position, and capable of performing, as a Child Care Service Supervisor.

54.

At all relevant times, Ascensa Health was Luckey's employer, as defined by Title VII and ADA.

55.

At all relevant times, Jones was Family Care Center Coordinator and McLarty was Director of Administrative services—both serving as Luckey's supervisor—responsible for, among other things, hiring and terminating Luckey's employment.

56.

Within hours of receiving the Reasonable Accommodation stating that Luckey could not operate motor vehicles or engage in certain tasks resulting in physical strain due the CTS pregnancy, Jones needlessly directed Luckey to relocate a vehicle and traverse stairs resulting in severe pain and, when Luckey had the audacity to inform Jones that Luckey could not relocate the vehicle or traverse the stairs, Defendants immediately terminated Luckey's employment.

57.

With the knowledge that Luckey was pregnant, Defendants terminated Luckey's employment solely because of the pregnancy.

58.

Defendants' termination of Luckey's employment due to pregnancy constitutes unlawful discrimination on the basis of pregnancy in violation of Title VII and the ADA.

59.

As a result of the termination of employment based solely upon Luckey's pregnancy, Luckey was treated less-favorably than similarly-situated, non-pregnant employees of Ascensa Health in violation of Title VII and the ADA.

60.

Defendants willfully and wantonly disregarded Luckey's rights.

61.

Defendants discriminated against Luckey in bad faith.

62.

The effect of the conduct complained of herein has been to deprive Luckey of equal employment opportunity and to otherwise adversely affect Luckey's status as an employee solely because of Luckey's pregnancy.

63.

As a direct and proximate result of Defendants' intentional violation of Title VII and the ADA, Luckey has been made the victim of acts that have adversely affected Luckey's psychological and physical well-being and, therefore, Defendants are liable for these damages.

## COUNT II
## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE REHAB ACT
### (Against Defendant Ascensa Health)

64.

Luckey re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

65.

The Rehab Act prohibits entities receiving Federal financial assistance from discriminating against otherwise qualified persons with disabilities in the terms, conditions, or privileges of employment.

66.

At all relevant times, Ascensa Health received, *inter alia*, Federal financial assistance, funding, and grants related to substance abuse programs.

67.

At all relevant times, the relationship between Luckey and Ascensa Health was a relationship of "employee" to "employer," such that a cause of action exists where discrimination based on disability is alleged to be the cause of an adverse action directed to the employee by the employer.

68.

At all relevant times, Ascensa Health acted by and through its agents and employees, each of whom acted within the course and scope of their respective employment with and for Ascensa Health.

69.

During Luckey's employment with Ascensa Health, Luckey was a qualified individual with a disability, which substantially impaired one or more major life activities, as defined by the Rehab Act.

70.

Ascensa Health regarded Luckey as having a qualified disability.

71.

During Luckey's employment, Ascensa Health had notice and knew of Luckey's qualified disability after, *inter alia*, Luckey notified Defendants of the CTS pregnancy, Luckey provided Defendants with the Reasonable Accommodation from Luckey's healthcare provided, and Luckey stated, in accordance with the Reasonable Accommodation, that Luckey could not relocate a vehicle and traverse certain stairs.

72.

Although Luckey requested certain reasonable accommodations that would have allowed Luckey to continue performing the essential functions of Luckey's position, Defendants failed to grant a reasonable accommodation, required Luckey to perform acts specifically prohibited by Luckey's healthcare provider, and punished Luckey who advised Defendants that the Reasonable Accommodation precluded Luckey from operating vehicles and traversing stairs.

73.

Defendants terminated Luckey's employment because of Luckey's qualified disability and request/need for a reasonable accommodation.

74.

Consequently, Luckey was unlawfully subjected to discrimination because of an actual disability, a record of disability, and/or being regarded as an individual with disability.

75.

As a proximate and direct result of Defendants' conduct, Luckey has suffered, and continues to suffer, damages, including, but not limited to, emotional distress, inconveniences, loss of income and benefits, for which Luckey is entitled to recover in an amount to be determined by the enlightened conscience of the jury.

76.

Defendants' actions were willful, intentional, malicious, and conducted in bad faith with callous and/or reckless indifference to Luckey's Federally-protected rights, thereby entitling Luckey to an award of punitive damages.

## COUNT III
## RETALIATION
## IN VIOLATION OF TITLE VII, THE ADA, AND THE REHAB ACT
### (Against Defendant Ascensa Health)

77.

Luckey re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

78.

The Title VII, the ADA, and the Rehab Act prohibit retaliation against an employee who opposes discrimination on the basis of, *inter alia*, gender, pregnancy, and/or disability.

79.

Luckey requested reasonable accommodation for her qualified disability that impaired one or more major life activities, conduct protected by the Rehab Act.

80.

After learning of Luckey CTS pregnancy, Defendants forced Luckey to relocate a vehicle and traverse stairs, which Defendants knew were prohibited by Luckey's healthcare provider and the Reasonable Accommodation.

81.

Although Luckey relocated the vehicle and traversed the stairs in violation of her healthcare provider's instructions, following Luckey's objection and request to continue performing under a reasonable accommodation, Defendants immediately terminated Luckey's employment.

82.

Defendants have a history of retaliating against employees who challenge unlawful employment practices.  For example, after a former-employee, Howard, commenced litigation related to unlawful employment practices, on or about December 5, 2019, Jones and Gray threatened to terminate the employment of any Ascensa Health employee who testified on behalf of the former employee or otherwise spoke about unlawful employment practices at Ascensa Health.  Similarly, upon information and belief, Ascensa Health has recently advised employees of the above-captioned case, required employees to sign documents stating that they will not testify on behalf of Luckey, and *apparently* threatened to take adverse employment actions against any employee who opposes the unlawful employment actions forming the basis of the above-captioned complaint.

83.

Defendants' adverse employment actions against Luckey constitute unlawful retaliation against Luckey in violation of Title VII, the ADA, and the Rehab Act.

84.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Luckey harm and/or were committed with reckless disregard of the harm causes to Luckey in derogation of Luckey's Federally-protected rights.

85.

As a direct and proximate result of Defendants' retaliation, Luckey has suffered financial losses, been deprived of employment, and otherwise lost compensation in the form of, *inter alia*, wages, insurance, retirement benefits, social security benefits, and other due benefits.

86.

Defendants' retaliation has also caused, continues to cause, and will cause Luckey to suffer injuries, warranting an award of compensatory and punitive damages in an amount to be determined at trial.

87.

Luckey is entitled to recover attorney's fees and litigation expenses.

## COUNT IV:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against Defendants Ascensa Health, McLarty, and Jones)

88.

Luckey re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

89.

Defendants' statements, conduct, and behavior towards Luckey were intentional and reckless, extreme and outrageous, causing Luckey severe shame, humiliation, embarrassment, and emotional distress of a nature that no pregnant person should endure.

90.

Defendants' statements, conduct, and behavior towards Luckey demonstrate, among other things, a "retaliatory animus." For example, after Luckey provided Defendants with the Reasonable Accommodation provided by Luckey's healthcare provider, Defendants immediately required, in direct violation of the Reasonable Accommodation, Luckey to relocate a vehicle and traverse stairs, resulting in severe pain related to Luckey's CTS pregnancy. Moreover, when Luckey advised Defendants that, pursuant to the Reasonable Accommodation, Luckey could not

continue to relocate the vehicle and/or traverse the stairs, Defendants immediately terminated Luckey's employment.

91.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Luckey and Luckey's income, livelihood, and/or healthcare during Luckey's known CTS pregnancy.

92.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Luckey, Defendants knew that Luckey was pregnant.

93.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Luckey.

94.

As a result of Defendants' conduct, Luckey has and will continue to suffer severe emotional distress, medical complications associated with the CTS pregnancy, and other damages for which Luckey is entitled to recover.

## COUNT V
## NEGLIGENT RETENTION AND SUPERVISION
## IN VIOLATION OF GEORGIA LAW
### (Against Defendant Ascensa Health)

95.

Luckey re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

96.

As a result of the actions taken by Jones and McLarty, Luckey suffered, among other things, discrimination based on pregnancy and disability, as well as retaliation.

97.

Ascensa Health owed Luckey a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory, retaliatory, or tortious conduct.

98.

By negligently retaining and supervising its employees, including Jones and McLarty, Ascensa Health breached its duty to hire, retain, and supervise an employee who would lawfully behave.

99.

Ascensa Health knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, to engage in unlawful conduct against Luckey.

100.

By failing to engage in any corrective or remedial action, Ascensa Health ratified, condoned, and/or adopted its employees' unlawful conduct.

101.

As a direct and proximate result of Ascensa Health's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by Ascensa Health's employees, including Jones and McLarty, Luckey suffered damages.

102.

Ascensa Health's negligent conduct entitles Luckey to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Luckey respectfully requests that this Court:

(1)     Grant Luckey a trial by jury as to all triable issues of fact;

(2)     Grant declaratory judgment that Luckey's rights under Title VII, ADA, and Rehab Act were violated;

(3)     Grant an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

(4)     Award compensatory damages in an amount to be determined by a jury;

(5)     Award appropriate back wages, future wages, and compensation for other damages in amounts to be shown at trial;

(6)     Award prejudgment interest on any award of back pay;

(7)     Award liquidated damages;

(8)     Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to deter such conduct in the future;

(9)     Award Luckey's attorneys' fees, costs, and disbursements; and

(10)    Award Luckey such further and additional relief as may be just and appropriate.

*[SIGNATURE ON THE FOLLOWING PAGE]*

Respectfully submitted, this 28th day of January, 2021.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff La'Drea L. Luckey*

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LA'DREA L. LUCKEY, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| ST. JUDE'S RECOVERY CENTER, INC., doing business as Ascensa Health; ANDREA MCLARTY; and JYLYAN JONES, | JURY TRIAL DEMANDED |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned certifies that this document has been prepared with a font and point selections approved by the Court in Local Rule 5.1(B) and that the foregoing **Complaint for Damages** has been filed with the Clerk using the CM/ECF system which will notify to the attorney(s) of record.

Respectfully submitted, this 28th day of January, 2021.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406